IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PAYNE V. GAGE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHRISTOPHER M. PAYNE, APPELLANT,

V.

BRIAN GAGE AND NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, APPELLEES.

Filed March 22, 2016.    No. A-15-703.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Christopher M. Payne, pro se.

Douglas J. Peterson, Attorney General, and James D. Smith for appellee.

MOORE, Chief Judge, and IRWIN and BISHOP, Judges.

BISHOP, Judge.

Christopher M. Payne, an inmate at Tecumseh State Correctional Institution (Tecumseh), appeals from the order of the district court for Lancaster County denying his application to proceed in forma pauperis for purposes of commencing a civil action against Brian Gage, the warden of Tecumseh, and the Nebraska Department of Correctional Services (Department). For the following reasons, we affirm.

### BACKGROUND

On June 4, 2015, Payne filed an "Application to Proceed without Payment of Fees," in which he alleged the following: (1) he was "an inmate"; (2) he earned "no wages, excepting inmate subsidized pay of one dollar and twenty-one cents per day, five days per week, and the occassional [sic] gift from family and friends to cover extrodinary [sic] expenses"; and (3) he had "no assets

of value but owes child support in excess of five thousand dollars." Payne's application did not include an affidavit as required by Neb. Rev. Stat. § 25-2301.01 (Reissue 2008).

Along with his application to proceed in forma pauperis, Payne submitted his proposed three-count complaint against Gage and the Department. Payne alleged violations of his right of access to the courts, his right to counsel in criminal matters, and his right to be free from cruel and unusual punishment. Specifically, Payne alleged that following an "incident" at Tecumseh on May 10, 2015, the institution had been on "a complete lockdown," with inmates allowed out of their cells once every 3 days for 20 minutes to shower, place phone calls, or clean their cells. Payne alleged this limited his access to the law library, to copy and notary services, and to contact with lawyers.

On June 8, 2015, the district court entered an order reserving ruling on Payne's request to proceed in forma pauperis. The court found the application insufficient on the basis that it did not include an affidavit. The order indicated the case would be dismissed in 21 days if Payne did not file a proper affidavit. It also directed that "the affidavit must include a copy of six months of the Applicant's monthly institutional account transactions certified by the institution of incarceration."

On June 16, 2015, the district court clerk received a letter from Payne enclosing certified copies of 6 months of his inmate account statements; no affidavit accompanied Payne's letter. Also on that date, on its own motion, the district court objected to Payne's request to proceed in forma pauperis, because it appeared Payne was able to pay the filing fee for his action. The court set the matter for hearing.

At the June 30, 2015, hearing, Payne participated telephonically. The court received into evidence the 6 months of inmate account statements; it then questioned Payne regarding some of the account transactions. Payne indicated the deposits he received in December 2014, which totaled $450 not including his inmate pay of $49.50, consisted of Christmas and birthday gifts from family and friends. Payne further indicated that because Tecumseh had been on lockdown following a riot on May 10, 2015, he was not working but was receiving a "lay-in pay" of $1.21 per day 5 days per week, which totaled approximately $25 per month. Payne stated that 5% of his pay went into a savings account for his release from prison, while 20% went to child support. So, Payne estimated his net monthly income was approximately $17.

Addressing various expenditures from his account during the past 6 months, Payne stated the $45.92 he spent at "Weird Harold" was for music CDs. He explained that some of his family members had wanted him to use his holiday gifts to purchase CDs. He also spent $33.69 at "Walkenhorsts," which Payne described as an "inmate supply company" from which he purchased typewriter ribbons.

At the conclusion of the hearing, the court took the matter under advisement. On July 8, 2015, the court entered an order denying Payne's application to proceed in forma pauperis. The court found that during the past 6 months, Payne had received approximately $1,138 in deposits to his inmate account and had spent $1,046 on discretionary items. The court reasoned the Department had an obligation to house, feed, and clothe Payne and also provide necessary hygiene items. The court explained Payne could not "spend his money on discretionary items and then ask the taxpayers . . . to pay for his litigation." The court gave Payne 30 days to pay the filing fee and costs or appeal the order.

Payne timely appealed, filing a notice of appeal and an "Application to Proceed In Forma Pauperis and Affidavit of Poverty." The district court granted Payne's request to proceed in forma pauperis on appeal.

## ASSIGNMENT OF ERROR

Payne assigns that the district court erred in denying his application to proceed in forma pauperis.

## STANDARD OF REVIEW

A district court's denial of in forma pauperis under Neb. Rev. Stat. § 25-2301.02 (Reissue 2008) is reviewed de novo on the record based on the transcript of the hearing or the written statement of the court. *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015).

## ANALYSIS

"In forma pauperis means the permission given by the court for a party to proceed without prepayment of fees and costs or security." Neb. Rev. Stat. § 25-2301 (Reissue 2008). Any person who seeks to commence, prosecute, defend, or appeal a civil or criminal case in forma pauperis must file an application requesting to proceed in that manner. § 25-2301.01. The application "shall include an affidavit stating that the affiant is unable to pay the fees and costs or give security required to proceed with the case, the nature of the action, defense or appeal, and the affiant's belief that he or she is entitled to redress." § 25-2301.01.

Section 25-2301.02(1) permits a court to deny a party's application to proceed in forma pauperis where the party "(a) has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious." An objection to the application may be made by the court on its own motion, as it was here. § 25-2301.02(1). An evidentiary hearing on the objection is to be conducted unless the objection is by the court on its own motion on the grounds that the applicant is asserting legal positions that are frivolous or malicious. § 25-2301.02(1). If an objection is sustained, the applicant has 30 days to proceed with an action or appeal upon payment of fees, costs, or security. § 25-2301.02(1).

Here, Payne filed an application to proceed in forma pauperis for purposes of commencing his civil action against Gage and the Department; as noted, his application did not include the affidavit required by § 25-2301.01. The district court objected to the application on its own motion on grounds that it appeared Payne had sufficient funds to pay the fees and costs associated with his action. Following a hearing, at which 6 months of Payne's inmate account statements were received into evidence, the court concluded Payne had sufficient funds and denied his application.

Payne argues the district court erred in "considering his previous financial position, his future financial position, and money received from others as gifts in denying his application." Brief for appellant at 3. He contends that rather than considering the gifts he receives from friends and family, the court should have based its decision on his "actual income" and "current assets." *Id*. at 4. Payne cites *Fine v. Fine*, 4 Neb. App. 101, 537 N.W.2d 642 (1995), for the proposition, in his words, that "it is improper to rely upon income derived from friends and family in determining a party's ability to pay the costs associated with litigation." Brief for appellant at 4. He argues he

should not have to "forego spending his gift money 'just in case' he should need to sue in the future." *Id*. at 7.

Our de novo review of the record leads us to the same conclusion as the district court. By our calculations, Payne received a total of $1,134.56 in deposits during the 6-month period ending on May 31, 2015. During the same period, Payne had a total of $560.17 in expenditures labeled "Store 04 Charges." In addition, he spent $45.92 at "Weird Harold," $66.85 at "Triarco Arts," $115.24 at "Fire Mountain Gems," $33.69 at "Walkenhorsts," and $73.45 at "Union Supply." The highest balance of his account during the period was $356.01 at the beginning of January 2015. At the end of May 2015, the balance was $102.26, although $56.59 of that balance was listed as "FR," apparently meaning frozen.

Given that Payne received an average of $189.09 in monthly deposits to his inmate account during the 6-month period ending on May 31, 2015, we agree with the district court that Payne had sufficient funds to pay the fees and costs associated with his civil action. In *Jacob v. Schlichtman*, 261 Neb. 169, 622 N.W.2d 852 (2001), the Nebraska Supreme Court agreed with the district court's finding that an inmate had sufficient funds to pay the costs of proceeding with his civil case where he had an average monthly income of $115 and a balance in his inmate account of $118.88. The average monthly deposits and account balances at issue here are similar to those in *Jacob*.

We find unpersuasive Payne's argument that the gifts he receives from family and friends do not constitute "income" for purposes of determining in forma pauperis status. The in forma pauperis statutes are phrased in terms of ability to pay, not in terms of "income." See § 25-2301.01 (requiring a statement that the affiant is "unable to pay" fees and costs); § 25-2301.02(1) (permitting denial of application if the applicant "has sufficient funds to pay costs, fees, or security"). Furthermore, Payne's reliance on *Fine v. Fine*, 4 Neb. App. 101, 537 N.W.2d 642 (1995), to support his "gift" argument, is unavailing.

In *Fine*, a party sought to appeal a divorce decree in forma pauperis, and the district court denied the application. This court reversed, holding that the record showed the party could not pay the costs of appeal within the required time. *Id*. We reasoned that the party's liabilities exceeded her assets, which included only $10 in her bank accounts, and we calculated the costs of the appeal as totaling $1,578. *Id*. We noted that while the party's "financial condition would have been better if she had maintained the job she once held, if she had selected her friends more carefully, and if she had not trusted someone who was not worthy of trust," nothing in the record supported a finding that the party had "voluntarily impoverished herself." *Id*. at 107, 537 N.W.2d at 646.

Contrary to Payne's characterization of it, *Fine* does not stand for the proposition that gifts from friends and family cannot be considered for purposes of denying in forma pauperis status. In *Fine*, we noted we did "not believe a person must unsuccessfully resort to begging for a loan from friends and family in order to qualify for in forma pauperis status." *Id*. In the present case, neither the district court's denial of Payne's application, nor our decision to affirm the denial, is based upon Payne's failure to request loans from friends and family. Instead, it is based in large part on Payne's voluntary decision to use the gifts he regularly received from friends and family to purchase discretionary items like music CDs, rather than for the fees and costs of litigation.

Furthermore, *Fine* is distinguishable because it dealt with a party who involuntarily became indigent and could not afford the costs of an appeal, which exceeded $1,500. Here, Payne voluntarily chose to spend the funds in his inmate account on discretionary items. Moreover, given that the deposits to his account totaled approximately $1,134 over a 6-month period, he would have had to forego only a small percentage of his discretionary purchases to fund the fees and costs required to proceed with his civil case. Notably, the current filing fees for a civil case in district court total $82. See Filing Fees and Court Costs (eff. Jan. 1, 2016), Nebraska Judicial Branch, available at https://supremecourt.nebraska.gov/4800/filing-fees-and-court-costs. The costs of service by the Sheriff vary by county, but likely would be similar to the filing fees.

In sum, we find no error in the district court's denial of Payne's application to proceed in forma pauperis in his civil action against Gage and the Department. Because we affirm the district court's denial of Payne's application on the basis that Payne had sufficient funds to pay the fees and costs of his action, we need not address the State's alternative arguments that denial of Payne's application was proper because he failed to file the required affidavit or because his action was frivolous. *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015) (an appellate court need not engage in an analysis that is not necessary to adjudicate the case and controversy before it).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Lancaster County. We note that Payne shall be permitted 30 days from the issuance of the mandate in this case in which to pay the fees and costs necessary to proceed with his action; otherwise, the district court is to dismiss the action. See *State v. Sims*, 291 Neb. 475, 865 N.W.2d 800 (2015).

AFFIRMED.